**No. 24-2**

In The United States Court of Appeals
for the Fourth Circuit

United States Of America,

*Plaintiff-Appellee*,

v.

David Anthony Runyon,

*Defendant-Appellant*.

On Appeal from the United States District Court for the Eastern District of Virginia, No. 4:15-cv-108-RBS-DEM (Hon. Rebecca Beach Smith)

**OPENING BRIEF FOR APPELLANT**

Kathryn M. Ali
Meghan C. Palmer
ALI & LOCKWOOD LLP
501 H Street NE, Suite 200
Washington, D.C. 20002
Telephone: 202-651-2475
katie.ali@alilockwood.com
meghan.palmer@alilockwood.com

Robert Lee
Capital Representation Resource
Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone: 434-817-2970
roblee@vcrrc.org

*Counsel for Defendant-Appellant David Runyon*

**TABLE OF CONTENTS**

INTRODUCTION...................................................................................................1

JURISDICTIONAL STATEMENT.........................................................................3

STATEMENT OF ISSUES...................................................................................4

STATEMENT OF THE CASE...............................................................................4

STANDARD OF REVIEW....................................................................................9

SUMMARY OF ARGUMENT............................................................................10

ARGUMENT......................................................................................................12

I.     This Court Should Grant a Certificate of Appealability.........................12

II.    The District Court Had Jurisdiction Over Runyon's Amended § 2255
       Petition.................................................................................................14

       A.     An Amendment Filed While an Initial Habeas Petition is Still
              Live Is Not Second or Successive...............................................14

       B.     The District Court Erred in Holding Runyon's Amendment
              Barred as Second or Successive.................................................21

              1.     The District Court Erred in Undertaking a Claim-Specific
                     Analysis of AEDPA's Gatekeeping Function......................21

              2.     The District Court Relied on Inapposite Caselaw................24

III.   Allowing Runyon to Amend Claim 9 of His Still-Pending Initial Habeas
       Petition Is Consistent with the Mandate Rule.......................................31

IV.    Runyon's § 924(c) Conviction Is Invalid in Light of The Supreme Court's
       Decision in *Taylor*...............................................................................35

       A.     *Taylor* Closed the "Realistic Probability" Loophole That This Court
              Relied On To Affirm Runyon's § 924(c) Conviction in Runyon.......36

       B.     Runyon Was Prejudiced By The Inclusion Of The Invalid
              Predicate....................................................................................39

i

CONCLUSION…………………………………………...…………………………..41

STATEMENT REGARDING ORAL ARGUMENT………………………………..42

CERTIFICATE OF COMPLIANCE……………………..…………………………..43

CERTIFICATE OF SERVICE…………………………………………………...44

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Ornoski*, 435 F.3d 946 (9th Cir. 2006) ......................................................13

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003) ...............27

*Balbuena v. Sullivan*, 980 F.3d 619 (9th Cir. 2020) ..............................................30

*Banister v. Davis*, 590 U.S. 504 (2020) ......................................................... *passim*

*Beaty v. Schriro*, 554 F.3d 780 (9th Cir. 2009) ......................................................30

*Bigelow v. Virginia,* 421 U.S. 809 (1975) ..............................................................36

*Bishop v. Lane*, 478 F. Supp. 865 (E.D. Tenn. 1978)..............................................26

*Bixby v. Stirling*, 90 F.4th 140 (4th Cir. 2024) ........................................... 14, 16, 27

*Buck v. Davis*, 580 U.S. 100 (2017)........................................................................12

*Busby v. Davis*, 677 F. App'x 884 (5th Cir. 2017) ..................................................13

*Ching v. United States*, 298 F.3d 174 (2d Cir. 2002) ..................................... *passim*

*Clark v. United States*, 764 F.3d 653 (6th Cir. 2014)................................. 16, 17, 18

*Davis v. Ayala*, 576 U.S. 257 (2015) ......................................................................39

*Freight Drivers & Helpers Loc. Union No. 557 Pension Fund
   v. Penske Logistics LLC*, 784 F.3d 210 (4th Cir. 2015) ......................................36

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ...................................................... *passim*

*Gray v. Branker*, 529 F.3d 220 (4th Cir. 2008) ......................................................19

*In re Gray*, 850 F.3d 139 (4th Cir. 2017) ........................................................ 22, 23

*In re Stansell*, 828 F.3d 412 (6th Cir. 2016) ..........................................................22

*Johnson v. United States*, 196 F.3d 802 (7th Cir. 1999)..........................................15

*Johnson v. United States*, 576 U.S. 591 (2015) ........................................ 6, 33, 37, 41

*Johnson v. United States*, 623 F.3d 41 (2d Cir. 2010)..............................................22

*Lambright v. Stewart*, 220 F.3d 1022 (9th Cir. 2000) ...............................................13

*Magwood v. Patterson*, 561 U.S. 320 (2010) ..................................................... 22, 23

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) .......................................................12

*Ochoa v. Sirmons*, 485 F.3d 538 (10th Cir. 2007).........................................29

*Perry v. Bartlett*, 231 F.3d 155 (4th Cir. 2000) ..........................................36

*Phillips v. United States*, 668 F.3d 433 (7th Cir. 2012)..................................... 28, 29

*Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015) ...............................................32

*Rivers v. Lumpkin*, 99 F.4th 216 (5th Cir. 2024) .................................................. 27, 28

*Rivers v. Lumpkin*,
   No. 23-1345, 2024 WL 4997858 (U.S. Dec. 6, 2024) .........................................14

*Runyon v. United States*, 228 F. Supp. 3d 569 (E.D. Va. 2017)................. 4, 5, 6, 33

*Sandoval Mendoza v. Lumpkin*, 81 F.4th 461 (5th Cir. 2023)...............................16

*Sessions v. Dimaya*, 584 U.S. 148 (2018).......................................................37

*Slack v. McDaniel*, 529 U.S. 473 (2000) ........................................................12

*Strand v. United States*, 780 F.2d 1497 (10th Cir. 1985) ........................................26

*United States ex rel. Harisiades v. Shaughnessy*,
   187 F.2d 137 (2d Cir. 1951) ............................................................26

*United States v. Ali*, 991 F.3d 561 (4th Cir. 2021) ...............................................40

*United States v. Allred*, 942 F.3d 641 (4th Cir. 2019) .............................................7

*United States v. Bell*, 5 F.3d 64 (4th Cir. 1993)................................................32

*United States v. Bell,* 988 F.2d 247 (1st Cir. 1993)..............................................32

*United States v. Cannady*, 63 F.4th 259 (4th Cir. 2023) ................................. *passim*

*United States v. Crooks*, 769 F. App'x 569 (10th Cir. 2019) .................................13

*United States v. Davis*, 588 U.S. 445 (2019) ......................................................6, 33

iv

*United States v. Green*, 67 F.4th 657 (4th Cir. 2023) ........................................ 34, 36

*United States v. Hemingway*, 734 F.3d 323 (4th Cir. 2013) ....................................10

*United States v. Lentz*, 524 F.3d 501 (4th Cir. 2008) ..............................................32

*United States v. MacDonald*, 641 F.3d 596 (4th Cir. 2011) ....................................10

*United States v. McDaniel,* 85 F.4th 176 (4th Cir. 2023) .........................................38

*United States v. Navarro-Cervellon*,
   No. 22-4696, 2024 WL 771699 (4th Cir. Feb. 26, 2024) ....................................38

*United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013) .............................................6

*United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021) .................................. passim

*United States v. Said*, 26 F.4th 653 (4th Cir. 2022) .............................. 35, 39, 40, 41

*United States v. Santarelli*, 929 F.3d 95 (3d Cir. 2019) ................................. passim

*United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) .............................................37

*United States v. Susi*, 674 F.3d 278 (4th Cir. 2012) ...............................................32

*United States v. Taylor*, 596 U.S. 845 (2022) .................................................. passim

*United States v. Terrell*, 141 F. App'x 849 (11th Cir. 2005) ...................................29

*United States v. Winston*, 850 F.3d 677 (4th Cir. 2017) ..........................................10

*Wentzell v. Neven*, 674 F.3d 1124 (9th Cir. 2012) ..................................................22

*Whab v. United States*, 408 F.3d 116 (2d Cir. 2005) ............................. 16, 17, 30, 31

*Williams v. Norris*, 461 F.3d 999 (8th Cir. 2006) ..................................................31

*Wilson v. Sec'y Pa. Dep't of Corr.*, 782 F.3d 110 (3d Cir. 2015) ..........................13

*Withrow v. Williams*, 507 U.S. 680 (1993) ..............................................................15

**Statutes**

18 U.S.C. § 16 ..........................................................................................................37

18 U.S.C. § 1958 ............................................................................... passim

18 U.S.C. § 2119 ..................................................................... 5, 7, 36, 39

18 U.S.C. § 924(c) ........................................................................... passim

28 U.S.C. § 1291 .................................................................................3, 17

28 U.S.C. § 2242 ....................................................................................14

28 U.S.C. § 2244 ...................................................................... 9, 14, 21, 23

28 U.S.C. § 2253 .................................................................................3, 12

28 U.S.C. § 2255 ............................................................................... passim

**Rules**

Fed. R. App. P. 12.1 ..............................................................................30

Fed. R. App. P. 22(b) ..............................................................................3

Fed. R. Civ. P. 15 ............................................................................ passim

Fed. R. Civ. P. 59(e)................................................................. 25, 26, 27, 31

Fed. R. Civ. P. 60(b) ....................................................................... passim

L.R. 22(a) ..............................................................................................3

Rule 11 of the Rules Governing 2255 Proceedings................................15

Rule 5 of the Rules Governing 2255 Proceedings.................................15

## INTRODUCTION

Habeas petitioners are entitled to one full opportunity to litigate their claims. While Runyon was still litigating his original petition in district court—and thus still within the bounds of that one full opportunity—he filed a motion to amend, supplement, or for reconsideration of, one of his original claims. Specifically, Runyon sought to raise a recently decided Supreme Court case that makes clear that his conviction under 18 U.S.C. § 924(c) rests on an invalid predicate, and that rejected this Court and the district court's previous basis for concluding otherwise.

The district court refused to consider Runyon's motion. Instead, it held that the motion constituted a second or successive habeas petition barred by the gatekeeping provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), and that it had no jurisdiction to consider it.

This was error. Runyon had not exhausted his one full opportunity to litigate his petition; it was still live, and the district court had jurisdiction over the entire petition. The court therefore had authority to entertain amendments or motions for reconsideration within all the normal parameters around such motions (including the mandate rule, the statute of limitations, and the court's discretion over whether permitting amendment serves the interest of justice). It should have considered the motion on its merits.

The district court's contrary conclusion rested on two critical errors. First, it

thought that Runyon had exhausted his "one full opportunity" *as to this particular claim*, even though the petition had been remanded for further proceedings. The Supreme Court has made clear, however, that that is not how AEDPA works: petitions, not claims, are second or successive.

The district court also believed that the weight of court of appeals caselaw was against Runyon, but closer scrutiny of those cases reveals the opposite is true. The decisions that have enforced earlier cut-offs have either involved Federal Rule of Civil Procedure 60(b) motions—which the Supreme Court has held are *not* part of the initial habeas proceeding—or situations where a motion to amend was filed after the district court lost jurisdiction over a petition. Both conclusions are entirely consistent with Runyon's position, and neither applies to his case.

There of course are still limits on what a petitioner can raise on remand after appeal, but the limits come from the mandate rule, not AEDPA's gatekeeping provision. And the mandate rule poses no obstacle here: even where an issue has been previously decided on appeal, a district court may resurrect issues in light of an intervening change of law, exactly what happened here.

Runyon's § 924(c) conviction and capital sentence are unconstitutional, and he was entitled to the opportunity to make this argument during his initial habeas proceeding. This Court should reverse the district court's erroneous jurisdictional conclusion. And because the underlying merits issue—whether Runyon's § 924(c)

2

conviction is based on an invalid predicate—presents a straightforward legal question that requires no additional factual development or fact finding by the district court, the Court should also reach and resolve it.

## JURISDICTIONAL STATEMENT

While David Runyon's motion to vacate his convictions and sentences under 28 U.S.C. § 2255 was being litigated in the district court, on remand from an initial appeal to this Court, Runyon moved for leave to amend "Claim 9" of his § 2255 motion[1], or in the alternative for reconsideration of the district court's denial of that claim, in light of the Supreme Court's intervening decision in *United States v. Taylor*, 596 U.S. 845 (2022). JA245–246. The district court construed that motion as an unauthorized second or successive § 2255 motion, and denied relief. JA391. Despite concluding that the issue presented was the subject of a circuit split, JA386, the district court also denied a certificate of appealability. JA394. On August 12, 2024, Runyon noticed his appeal. JA396–398. Pursuant to Fed. R. App. P. 22(b)(1), (2) and L.R. 22(a), Runyon files this brief and requests a COA. If granted, jurisdiction will arise under 28 U.S.C. §§ 1291 and 2253.

---

[1] Runyon filed his first § 2255 motion on October 5, 2015. JA135. He amended it shortly after, before the district court ruled on it. *See* JA173. There is no question that this amended motion still counts as Runyon's initial motion for purposes of AEDPA. For simplicity, this brief refers to that amended motion as Runyon's "initial § 2255 motion."

**STATEMENT OF ISSUES**

1. Whether the district court erred in denying a Certificate of Appealability despite acknowledging that the issue presented "appears to be the subject of a circuit split," and that published caselaw from at least three other circuits contradicted the district court's conclusion.

2. Whether the district court erred in concluding it lacked jurisdiction to hear a timely amendment to Runyon's initial § 2255 petition based on an intervening Supreme Court decision, even though that initial petition was still being litigated before the district court and Runyon had not yet exhausted his first full opportunity for collateral review.

3. Whether Runyon's conviction and sentence under 18 U.S.C. § 924(c) must be vacated based on the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022), which rejected the "realistic probability" analysis that the district court and this Court previously relied on to find that Runyon's conspiracy conviction was a "crime of violence" and therefore a valid predicate offense.

**STATEMENT OF THE CASE**

In February 2008, the government charged Runyon, Catherina ("Cat") Voss, and Michael Draven with capital murder for the death of Cat's husband, Cory Voss. *Runyon v. United States*, 228 F. Supp. 3d 569, 583 (E.D. Va. 2017).

Ten months earlier, Voss, an off-duty Navy officer, was found shot to death

4

in his pickup truck, in a parking lot near a federal credit union in Newport News, Virginia. *Id.* at 582. The victim and Cat were married and had two young children. *Id.* at 581. Cat also was in a secret relationship with Draven and, over several months, the two planned to kill her husband. *Id.* On the night of the crime, Cat sent her husband to withdraw cash from a nearby credit union ATM knowing the account contained only five dollars; it was an ambush. *Id.* at 582. Immediately after her husband's death, the Navy paid Cat $100,000 and she and Draven promptly spent the entire sum. *Id.* at 582, 694.

Cat pled guilty and was sentenced to life without the possibility of parole. *Id.* at 583. The government tried Draven and Runyon together but sought death only for Runyon. *Id.* at 584. During guilt-phase closing arguments, the government argued that the purpose of the carjacking was simply an attempt to obfuscate the conspiracy at the heart of the case by "mak[ing] it look like some random person" killed Cory Voss. JA133–134. The government also made almost no effort to connect the gun to the carjacking. In fact, the government did not even mention use of a gun (a prerequisite for a § 924(c) charge) in connection with the carjacking until its closing argument rebuttal. JA133.

At the close of proof, jurors convicted Runyon on three counts: conspiracy to commit murder-for-hire, 18 U.S.C. § 1958(a) (Count One); carjacking resulting in death, 18 U.S.C. § 2119 (Count Two); and murder with a firearm in relation to a

5

crime of violence, 18 U.S.C. § 924(c)(1), (j)(1) (Count Five). *See United States v. Runyon*, 994 F.3d 192, 197 (4th Cir. 2021). The trial court did not ask jurors to indicate whether they relied on the conspiracy charge, or on the carjacking charge, as the predicate for the § 924(c) conviction, and the jurors' verdict form did not specify which they relied on to convict on the § 924(c) charge. *Id.* at 201. At sentencing, jurors returned death sentences on the conspiracy and murder with a firearm charges (Counts One and Five) and a sentence of life without the possibility of release on the carjacking charge (Count Two). *Id.* at 198–99.

This Court affirmed Runyon's convictions and sentences on direct review. *United States v. Runyon*, 707 F.3d 475, 521 (4th Cir. 2013). Runyon timely filed a § 2255 motion raising numerous claims for relief, including penalty phase ineffective assistance of counsel ("Claim 6") and that his § 924(c) conviction was unconstitutional under *Johnson v. United States*, 576 U.S. 591 (2015), because it was not predicated on a valid "crime of violence." ("Claim 9"). *See* JA135–150.

The district court denied the § 2255 motion without discovery or an evidentiary hearing. *Runyon*, 228 F. Supp. 3d at 670. Runyon appealed. *See Runyon*, 994 F.3d at 197. While that appeal was pending, the Supreme Court decided *United States v. Davis*, 588 U.S. 445 (2019), holding that § 924(c)'s residual clause was unconstitutionally vague (extending its decision in *Johnson*).

6

This Court granted a certificate of appealability on several issues, including "[w]hether Runyon's conviction under 18 U.S.C. § 924(c) is unconstitutional" (Claim 9), and "[w]hether trial counsel provided ineffective assistance by failing to present evidence of Runyon's brain damage and mental illness" (Claim 6). JA212–213. After briefing and argument, a divided panel affirmed the district court's denial of Claim 9, with the majority concluding that both the § 2119 carjacking and the § 1958 conspiracy to commit murder for hire resulting in death were crimes of violence and therefore valid predicates for the § 924(c) charge. *Runyon*, 994 F.3d at 204. The panel majority acknowledged that "conspiracy alone does not necessarily implicate the use of force." *Id.* at 203. But it nonetheless held that conspiracy to commit murder for hire was a crime of violence because "there is no 'realistic probability' of the government prosecuting a defendant for entering into a conspiracy with the specific intent that a murder be committed for hire and for a death resulting from that conspiracy while that death was somehow only accidentally or negligently caused." *Id.* at 203 (quoting *United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019)).

On Claim 6, the Court granted relief, vacating the dismissal of Runyon's § 2255 motion "to the extent that [the district court] dismissed without a hearing Runyon's claim of ineffective assistance of counsel for failure to investigate and present evidence of his brain damage and mental health." *Id.* at 212.

7

While Runyon's § 2255 petition was on remand for an evidentiary hearing on his ineffective assistance of counsel claim, the Supreme Court decided *United States v. Taylor*, 596 U.S. 845 (2022), which rejected the "realistic probability" analysis that this Court had used to determine whether an offense is a "crime of violence" under 18 U.S.C. § 924(c) in its 2021 decision denying Claim 9.[2] Based on this intervening authority, Runyon sought leave to supplement or amend, or for reconsideration of, Claim 9 of his pending habeas petition. JA245–248. He relied on Federal Rule of Civil Procedure 15, which applies in habeas proceedings and provides that courts should "freely give leave [to amend] when justice so requires." JA251. He further explained that his supplement or amendment related back to his original claim for purposes of Rule 15(c), rendering it timely. JA251. In the alternative, Runyon sought reconsideration of the district court's earlier denial of this claim on similar grounds. JA252. Runyon explained that although this Court's remand did not encompass Claim 9, the amendment to Claim 9 would be fully consistent with the "mandate rule," under the well-established principle that a district

---

[2] While not relevant to the jurisdictional issue here, Runyon moved to recall the mandate and for leave to file a petition for rehearing or en banc review in light of *Taylor*. JA214–226. This Court denied the motion to recall the mandate. JA227. Runyon then filed a petition for rehearing of the panel's denial of the petition to recall the mandate, JA228–243, which was also denied, JA244.

court can reopen issues where controlling legal authority has changed dramatically. JA252.

The district court denied Runyon's motion. JA376. Rather than considering the motion on its merits, the district court construed Runyon's filing as an unauthorized successive petition under AEDPA's gatekeeping provisions. JA384, 391 (citing 28 U.S.C. §§ 2244(b) and 2255(h). Though it recognized that the motion concerned Runyon's *first* petition, which remained live and pending before the court, the district court held that Claim 9 had already been fully adjudicated on the merits, and therefore any arguments as to that claim were second or successive. JA382. The district court acknowledged that several published courts of appeals cases supported Runyon's position, JA385–387, but elected not to follow their reasoning. Despite acknowledging the existence of this contrary authority, the district court denied a COA. JA394.

By separate order, the district court also denied relief on Claim 6. JA276.

Runyon timely noticed his appeal on both claims. JA396–398. While briefing was pending, President Biden commuted Runyon's death sentences, JA399–400, which mooted Claim 6 and narrowed the issues in this appeal.

## STANDARD OF REVIEW

This Court reviews de novo a district court's conclusion that a § 2255 motion is an unauthorized successive petition. *United States v. MacDonald*, 641 F.3d 596,

609 (4th Cir. 2011). Whether a prior conviction qualifies as a predicate enhancing felony is also a legal question subject to de novo review. *See United States v. Hemingway*, 734 F.3d 323, 331 (4th Cir. 2013), *superseded by statute on other grounds*; *United States v. Winston*, 850 F.3d 677, 683 (4th Cir. 2017), *abrogated on other grounds by United States v. Williams*, 64 F.4th 149, 152 n.3 (4th Cir. 2017), *as recognized in United States v. Parham*, 129 F.4th 280, 284 (4th Cir. 2025).

## SUMMARY OF ARGUMENT

Runyon's § 924(c) conviction rests on an invalid predicate: the Supreme Court has expressly overruled the test this Court used to affirm Runyon's conviction in his last appeal. This claim was part of his initial habeas petition, which still has not been fully adjudicated; Runyon merely sought to amend the claim or have it reconsidered in light of the decisive shift in governing legal precedent.

But the district court erroneously refused to consider the claim. It did so because it wrongly construed Runyon's motion to amend or for reconsideration as an AEDPA-barred second or successive petition. In fact, Runyon filed his motion while proceedings on his *first* petition were still ongoing, on remand after a successful appeal. He had not yet exhausted the one full opportunity to litigate his claims that AEDPA affords every habeas petitioner. Accordingly, he retained the ability to amend or seek reconsideration within the normal limitations around such motions.

10

The district court's analysis is rife with errors, including relying on out-of-circuit caselaw and glossing over critical procedural distinctions between Runyon's case and those cases—none of which resolve the precise, narrow question here. Additionally, the district court thought it significant that this Court had remanded for further proceedings on Claim 6, but not on Claim 9, and therefore construed a motion relating to Claim 9 as second or successive. This is contrary to Supreme Court precedent holding that courts have jurisdiction over entire petitions; the analysis is not piecemeal claim-by-claim. On remand, the district court had jurisdiction over the entire petition; AEDPA's gatekeeping provision does not apply on a claim-by-claim basis.

The district court should have evaluated the motion under the normal parameters for amendments or reconsideration: the mandate rule, which governs what issues can be reopened on remand after appeal, and Rule 15, which governs amendments. Neither poses any obstacle to Runyon's motion. Amending a claim after an intervening change in controlling precedent that fatally undermines the reasoning of a previous decision is fully consistent with the mandate rule and Rule 15.

Although the district court declined to reach the merits of Runyon's amended Claim 9, this Court should do so, something it routinely does where the issue is a pure question of law that can be decided on the existing record. This Court has

11

already held that one of the two "crime of violence" predicates that Runyon's § 924(c) conviction rests on "does not necessarily implicate the use of force," but it nonetheless found the crime to be a valid predicate based on a test that has now been overruled by the Supreme Court. Runyon was prejudiced by this error: the record shows the jury relied on the invalid conspiracy predicate when it convicted and sentenced Runyon. This Court should vacate the conviction and sentence.

## ARGUMENT

### I.      This Court Should Grant a Certificate of Appealability.

To obtain a Certificate of Appealability (COA), the applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A COA should issue where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The COA requirement contemplates only a threshold inquiry that should not "place[] too heavy a burden on the prisoner at the COA stage." *Buck v. Davis*, 580 U.S. 100, 117 (2017).

This does not require a showing that the appeal will succeed, and the standard may be satisfied even if "every jurist of reason might agree, after the COA has been granted and has received full consideration, that petitioner will not prevail." *Id. See also Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) ("The State represents to us that petitioner will not be able to satisfy his burden. That may or may not be the case. It

is not, however, the question before us. The COA inquiry asks only if the District Court's decision was debatable.").

As many courts have held, if another circuit has a conflicting view of an issue, that alone is sufficient to warrant a COA. *Lambright v. Stewart*, 220 F.3d 1022, 1026–28 (9th Cir. 2000) ("[T]he fact that another circuit opposes our view satisfies the standard for obtaining a COA."); *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006) ("Even if a question is well settled in our circuit, [the issue] is debatable if another circuit has issued a conflicting ruling."); *Wilson v. Sec'y Pa. Dep't of Corr.*, 782 F.3d 110, 115 (3d Cir. 2015) (conflicting decision from another circuit "demonstrates that the issue [the petitioner] presents is debatable among jurists of reason" (internal quotation marks omitted)); *United States v. Crooks*, 769 F. App'x 569, 573 (10th Cir. 2019) (similar); *Busby v. Davis*, 677 F. App'x 884, 891 (5th Cir. 2017) (similar).

Runyon easily satisfies the standard for a COA. The district court acknowledged that its holding was debatable among jurists of reason when it noted that "this issue appears to be the subject of a circuit split." JA386. The court also acknowledged that published caselaw from the Second Circuit "may provide a framework" for finding jurisdiction and considering Runyon's amended Claim 9, though it elected not to adopt this framework, and it cited caselaw from the Third and Sixth Circuits that supports Runyon's position. JA386–387 & n.8. Three courts

of appeals reaching a decision contrary to the district court shows that its conclusion was debatable. Confirming the existence of debate on these issues, the Supreme Court recently granted certiorari on a related question in *Rivers v. Lumpkin*, No. 23-1345, 2024 WL 4997858 (U.S. Dec. 6, 2024).[3]

## II. The District Court Had Jurisdiction Over Runyon's Amended § 2255 Petition.

### A. An Amendment Filed While an Initial Habeas Petition Is Still Live Is Not Second or Successive.

Under AEDPA, a habeas petitioner "is entitled to one fair opportunity to seek federal habeas relief from his conviction." *Banister v. Davis*, 590 U.S. 504, 507 (2020). After that, AEDPA imposes significant limitations on "second or successive" habeas petitions; they are subject to the "gatekeeping" provision of 28 U.S.C. § 2244(b)—that is, they require prior authorization from the court of appeals and are generally disallowed. *See Bixby v. Stirling*, 90 F.4th 140, 146 (4th Cir. 2024) (quoting 28 U.S.C. § 2244).

While the initial petition remains pending in district court, it may be amended in accordance with Rule 15. *See* 28 U.S.C. § 2242 (a § 2255 motion "may be amended or supplemented as provided in the rules of procedure applicable to civil

---

[3] Although relevant, *Rivers* did not involve a situation where a petitioner filed an amendment to their original petition in district court while on remand after a successful appeal, and thus raises a different question than this case, as explained further below, *see infra* § II.B.2.

actions"); *see also* Rule 11 of the Rules Governing 2255 Proceedings (rules of civil procedure apply to extent not inconsistent with habeas rules); Advisory Committee Note to Rule 5 of the Rules Governing 2255 Proceedings ("civil rule 15(a) may be used to allow the petitioner to amend his petition"); *Withrow v. Williams*, 507 U.S. 680, 696 n.7 (1993) ("Rule 15 applies in habeas actions").

The Supreme Court has made clear that a petition is not automatically second or successive just because it comes later in time than an initial petition. *See Banister*, 590 U.S. at 511–12. The paradigmatic case of a second or successive petition is where a petitioner "files a motion, loses on the merits, exhausts appellate remedies, and then files another motion." *Johnson v. United States*, 196 F.3d 802, 804 (7th Cir. 1999). By contrast, "an amended petition, filed after the initial one but before judgment, is not second or successive." *Banister*, 590 U.S. at 512. "So too, appeals from the habeas court's judgment (or still later petitions to th[e Supreme] Court) are not second or successive; rather, they are further iterations of the first habeas application." *Banister*, 590 U.S. at 512. So long as a petitioner's "first habeas proceeding" is ongoing, his filings do not count as "second or successive." *Id.* at 517.[4]

---

[4] In *Banister*, the Supreme Court distinguished earlier precedent holding that Rule 60(b) motions count as second or successive. 590 U.S. at 520–21. The Court explained that Rule 60(b) motions—unlike a Rule 59(e), or other mid-proceeding motions—are not part of the "initial habeas proceeding." *Id.*

Based on these principles, several courts of appeals[5] have correctly held that a petitioner may amend a habeas petition—and that amendment is not second or successive—so long as appellate review of the initial petition has not been exhausted. *Whab v. United States*, 408 F.3d 116, 118 (2d Cir. 2005); *United States v. Santarelli*, 929 F.3d 95, 104–05 (3d Cir. 2019) (amendment not second or successive unless and until petitioner "has expended the one full opportunity to seek collateral review that AEDPA ensures, which we interpret in this context as meaning after the petitioner has exhausted all of her appellate remedies" (internal quotation marks and citation omitted)); *see also Clark v. United States*, 764 F.3d 653, 658 (6th Cir. 2014) ("A motion to amend is not a second or successive § 2255 motion when it is filed before the adjudication of the initial § 2255 motion is complete—*i.e.*, before the petitioner has lost on the merits and exhausted her appellate remedies."); *Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 470 (5th Cir. 2023) (permitting amendment of habeas petition on remand from appellate court in accordance with Rule 15, and holding it not barred as second or successive, though finding holding confined to facts of case).

---

[5] This Court has not yet resolved this issue. In *Bixby*, the Court held that a Rule 60(b) motion filed after final judgment counts as a second or successive petition, 90 F.4th at 149–50, but, as discussed further below, that is a different issue than this case, follows directly from Supreme Court precedent that Runyon does not challenge, and is irrelevant here, where Runyon did not file a Rule 60(b) motion.

These courts reason that habeas petitioners are entitled to "one *full* opportunity for collateral review." *Whab*, 408 F.3d at 118. As long as the § 2255 petition is still live and has not been *conclusively* decided on appeal, "adjudication of [the] initial motion was not yet complete." *Ching v. United States*, 298 F.3d 174, 178 (2d Cir. 2002). This is true even if the district court has rendered a judgment because "until the adjudication of an earlier petition has become final, its ultimate disposition cannot be known." *Whab*, 408 F.3d at 118; *see also Clark*, 764 F.3d at 660 ("A plaintiff has not had an opportunity for the full adjudication of her claims simply because a district court has rendered a judgment that is 'final' within the meaning of 28 U.S.C. § 1291.").

These courts reject the notion that all filings after a district court's dismissal of an initial petition are second or successive petitions. As the Third Circuit explains, this would improperly graft onto the "one full opportunity to seek collateral review" "an unstated qualifier: 'one full opportunity to seek collateral review' *in the district court*." *Santarelli*, 929 F.3d at 104. There is no such qualifier in AEDPA or Supreme Court precedent. On remand after a successful appeal, a petitioner's initial petition remains live.

That habeas petitioners are afforded this "full" opportunity for collateral review is particularly important. "The general concern that civil plaintiffs have an opportunity for a full adjudication of their claims is particularly heightened in the

AEDPA context, where the gatekeeping provisions of the statute stringently limit a petitioner's ability to raise further issues in a subsequent action." *Clark*, 764 F.3d at 660 (quoting *Ching*, 298 F.3d at 177). And of course, a successful appeal means there was an error in the district court's resolution of the petition. It would make little sense—and could hardly count as a "full" opportunity for collateral review—if an erroneous district court judgment marked the endpoint of collateral review.

These courts have it right. Remand after a successful appeal of the dismissal of an initial habeas petition reopens the litigation, and the petitioner has the ability to amend, as in any ongoing proceeding.

This does not mean, of course, that habeas petitioners have unrestricted ability to amend their petitions at any time before exhaustion of appellate review. Several limitations still apply. First, the mandate rule controls—and significantly constrains—what issues a petitioner can raise on remand after a successful appeal. *See United States v. Cannady*, 63 F.4th 259, 266–67 (4th Cir. 2023) (lower court may not reconsider issues the mandate laid to rest unless an exception applies).

Second, Rule 15 limits what amendments are allowed. Under Rule 15(a)(2), district courts retain broad discretion over whether to grant a Rule 15 motion. *Ching*, 298 F.3d at 180 ("Even though Rule 15 provides that 'leave shall be freely given when justice so requires,' the district court may deny that leave where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." (quoting

Fed. R. Civ. P. 15(a)). Additionally, AEDPA's one-year statute of limitations still applies to amendments, and under Rule 15(c)(2), any amendment filed outside that window must "relate back" to claims in the original petition to be timely—that is, any amendment must arise "out of the conduct, transaction, or occurrence set forth— or attempted to be set forth—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see also Gray v. Branker*, 529 F.3d 220, 241 (4th Cir. 2008) (amendment to habeas petition time-barred where it did not relate back to the original petition). These limitations "safeguard[] against the possibility that Rule 15's amendment procedures will be exploited by petitioners for the purpose of undermining the rules designed to prevent abuse of the writ, regardless of the procedural posture of the case at the time the motion to amend is brought." *Ching*, 298 F.3d at 180.

Finally, normal jurisdictional dynamics also circumscribe a petitioner's ability to amend the original habeas petition. A district court can only consider a motion to amend or a new petition if it has jurisdiction over the original petition. When a petitioner files a notice of appeal of an adverse judgment, this "divests the district court of its control over those aspects of the case involved in the appeal." *Santarelli*, 929 F.3d at 106 (internal quotations omitted). Accordingly, a district court could not consider a motion to amend once a notice of appeal has been filed, absent a remand. *See id.* (pendency of appeal divests district court of jurisdiction to consider amendment "*unless and until the court of appeals remands the matter to the district*

*court*") (emphasis added). *See also Ching*, 298 F.3d at 180 n.5 (had court of appeals affirmed denial of initial petition and *not* remanded it, Ching would have been "foreclosed from bringing these additional claims unless he satisfied the requirements applicable to second or successive motions"). And if the dismissal of an initial petition is affirmed on appeal, the district court never regains jurisdiction, and any new filings in district court would then correctly be deemed second or successive.

Under these principles, Runyon's motion to amend Claim 9 of his initial habeas petition was not a second or successive petition, and it was not subject to AEDPA's gatekeeping function. At the time Runyon sought to amend Claim 9 of his original petition, that original petition was pending before the district court, on remand from a successful appeal to this Court. His proposed amendment was therefore not an unauthorized successor. Rather, it was an amendment to an initial, live § 2255 petition over which the district court had jurisdiction. Nor did Runyon seek to add new claims to his § 2255 petition or introduce new evidence or in any way circumvent AEDPA's restrictions on successive petitions. Instead, he simply asked the district court to reconsider or allow amendment of a claim already properly before that court based on intervening Supreme Court precedent. JA249–251. The district court should not have dismissed the motion as second or successive, but rather should have considered whether to allow amendment in light of the normal

parameters applied to such a motion: Rule 15 and the mandate rule.

**B. The District Court Erred in Holding Runyon's Amendment Barred as Second or Successive.**

The district court's determination that Runyon's attempt to amend his pending petition was an unauthorized successive petition over which it had no jurisdiction rested on two main errors. First, the district court thought it dispositive that this Court had remanded for an evidentiary hearing on Claim 6 alone, rendering any amendment to Claim 9 at that point an unauthorized successive petition. Second, the district court relied on an inapposite body of caselaw, specifically looking to cases adjudicating Rule 60(b) motions—that applies to circumstances very different from those in which Runyon sought leave to amend, supplement, or have his still-pending petition reconsidered.

1. The District Court Erred in Undertaking a Claim-Specific Analysis of AEDPA's Gatekeeping Function.

The district court based its decision to categorize Runyon's filing as second or successive in large part on the fact that this Court had previously affirmed the district court's denial of all but one claim from Runyon's initial § 2255 petition. Because the remand was limited to Claim 6, the district court reasoned, an amendment to another claim would constitute an unauthorized successor. JA385, 391. In other words, in the district court's view, individual *claims* can be subject to § 2244(b). *See* JA382. That is directly contrary to binding precedent.

21

As the Supreme Court has held, "the second or successive inquiry applies to the habeas *petition as a whole* and not to the petition's individual *claims*." *In re Gray*, 850 F.3d 139, 144 n.4 (4th Cir. 2017) (citing and applying *Magwood v. Patterson*, 561 U.S. 320 (2010)) (emphasis added). A petition cannot be sliced into separate claims, each to be analyzed independently—it must be treated as one unified whole. *See In re Stansell*, 828 F.3d 412, 418 (6th Cir. 2016) (courts "must apply the term 'second or successive' to the application as a whole, not to individual claims within it," and noting that *Magwood* "condemns" a contrary claim-by-claim approach); *Wentzell v. Neven*, 674 F.3d 1124, 1126 (9th Cir. 2012) (similar); *Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010) ("In light of *Magwood,* we must interpret successive applications with respect to the judgment challenged and not with respect to particular components of that judgment.").

While the district court acknowledged that *Magwood* and *Gray* are "important cases," it declined to apply them to this case. JA382. The court thought it critical to both cases that habeas petitioners were in each instance filing new petitions based on new, intervening judgments following resentencing. JA383 ("The Fourth Circuit's adoption of the *Magwood* framework for interpreting the 'second or successive' language acknowledged that it focused on whether the second-in-time petition challenged a new sentencing judgment."); JA383 ("Namely, *Gray* just extends *Magwood* to cases where a second-in-time petition challenges an

22

intervening sentencing judgment, with an undisturbed conviction from the original sentencing judgment."). But, it held, since there was no such intervening judgment in Runyon's case, that *Magwood* and *Gray* do not apply here. JA383.

This was based on a fundamental misreading of those cases' holdings, which do not rely on "the existence of a new judgment." JA383. While both *Gray* and *Magwood* happen to be cases involving intervening new judgments, those new judgments were not central to the holding of either case, which is both much simpler and much broader: petitions, not claims, are subject to AEDPA's second or successive rule. *Magwood*, 561 U.S. at 330–42. The district court emphasized one clause in *Gray* that notes "the existence of a new judgment is dispositive." JA383 (quoting *Gray*, 850 F.3d at 141). But all that means is that a new judgment is a *sufficient* condition for a petition to avoid being run through §2244(b)—it is not a *necessary* one, though. Indeed, the preceding clause makes clear what the actual holding of *Magwood* is: "The Court [in *Magwood*] thus did away with a claims-based approach to determining whether a petition is second or successive in favor of a judgment-based approach." JA383.

Therefore, when this Court remanded Claim 6 to the district court, the entire § 2255 petition—including Claim 9—was remanded with it. The district court had jurisdiction over the *entirety* of Runyon's petition, and it was error to hold otherwise. Of course, this does not mean Runyon had free reign to re-litigate claims already

23

litigated and decided. The limitations already discussed—specifically, the mandate rule and Rule 15,—constrain what claims may be re-opened in this context. But the key point is that these are not jurisdictional. And for that reason, the district court's fear that allowing Runyon to amend his claim would constitute an end-run around the strictures of § 2255(h) and "eviscerate" the circuit court's ability to limit the scope of remand, JA384–385, was misplaced. There are meaningful limiting principles at play that would prevent the proper application of *Magwood* from unleashing a flood of amendments and piecemeal litigation.

2.  The District Court Relied on Inapposite Caselaw.

Compounding its error, the district court also relied on a host of inapposite cases to disclaim jurisdiction. It cited a line of out-of-circuit authority which it took to stand for the broad proposition that "a second-in-time petition is a successive petition where it is filed while appeal of the original petition is pending." JA386–387. Not only are these cases not binding, they also don't concern the same question as in this appeal. The court overlooked several decisive procedural distinctions between this caselaw and Runyon's case, as well as errors in their reasoning.

Start with the fact that the district court's caselaw all relies heavily on *Gonzalez v. Crosby*, 545 U.S. 524 (2005). In that case, the Supreme Court held that Rule 60(b) motions that seek to reopen a dismissal of a habeas petition should generally be construed as second or successive habeas petitions. *Id.* at 532.

*Gonzalez* was specific to motions made under Rule 60(b), which are "often distant in time and scope," "attack[] an already completed judgment," and "always giv[e] rise to a separate appeal." *Banister v. Davis*, 590 U.S. 504, 520–21 (2020). It neither involved nor addressed amendments to a live petition before final judgment under Rule 15, nor motions for reconsideration. In fact, a later Supreme Court case cabined *Gonzalez* to the Rule 60(b) context, holding that Rule 59(e) motions are *not* second or successive habeas petitions. *See id.* at 517–21.

Rule 59(e) motions, like Rule 60(b) motions, are filed after judgment, but "Rule 60(b) differs from Rule 59(e) in just about every way that matters to the inquiry here." *Id.* at 518. A 59(e) motion must be filed within a "narrow window" after entry of judgment (28 days). *Id.* at 516. A petitioner "may invoke the rule only to request reconsideration of matters properly encompassed in the challenged judgment." *Id.* (internal quotation marks omitted). "And reconsideration means just that: Courts will not entertain arguments that could have been but were not raised before the just-issued decision." *Id.* A Rule 60(b) motion, by contrast, "can arise long after the denial of a prisoner's initial petition, [and] generally goes beyond pointing out alleged errors in the just-issued decision." *Id.* at 519–20. A Rule 60(b) motion "threatens serial habeas litigation," while "a Rule 59(e) motion is a one-time effort to point out alleged errors in a just-issued decision before taking a single appeal." *Id.* at 521. They also derive from different sources: Rule 59(e) "derives

25

from a common-law court's plenary power to revise its judgment . . . before anyone could appeal, [while] Rule 60(b) codifies various writs used to seek relief from" an already completed judgment. *Id.* at 518. The critical differences between the two post-judgment motions lead to different outcomes: a Rule 60(b) motion that advances a claim on collateral review constitutes a second or successive petition; a Rule 59(e) motion does not. *Id.* at 521.

*Gonzalez* has little bearing on Runyon's case because he did not file a Rule 60(b) motion. Runyon filed his motion under Rule 15 and under the district court's inherent authority to reconsider its rulings prior to final judgment. JA251–253. Rule 15 motions are far more like those under Rule 59(e); they do not raise the AEDPA-circumvention concerns that motivated *Gonzalez.* Indeed, Rule 15 and Rule 60(b) have little in common. Pre-AEDPA, Rule 15 motions were not historically deemed abusive and were considered on the merits. *See, e.g.*, *United States ex rel. Harisiades v. Shaughnessy*, 187 F.2d 137, 138 (2d Cir. 1951) (mid-appeal amendment denied on the merits); *Strand v. United States*, 780 F.2d 1497, 1503 (10th Cir. 1985) (same); *Bishop v. Lane*, 478 F. Supp. 865, 866 (E.D. Tenn. 1978) (instead of deeming the motion successive, court simply walked the prisoner through the rules of civil procedure and then denied leave to amend). Rule 15 amendments also are not "open-ended," and any appeal from the denial of a Rule 15 motion would be consolidated into the pending appeal. *Cf. Banister*, 590 U.S. at 519. And numerous "rules

26

suppress[] abuse." *Id.* at 521. In fact, mid-appeal Rule 15 motions pose far less circumvention risk than the Rule 59(e) motions the Court approved in *Banister*. Motions for reconsideration—the alternative basis for Runyon's motion—are even less like Rule 60(b) motions than Rule 15 motions. And they are even less of a circumvention risk than a Rule 15 motion. Such a motion generally does not seek to add new facts or claims or new theories for relief. It simply asks for reconsideration—something the court has the inherent authority to do at any point prior to final judgment. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003).

Accordingly, *Gonzalez*—and other cases holding Rule 60(b) motions subject to AEDPA gatekeeping—does not resolve the discrete issue in Runyon's case. *See, e.g.*, *Bixby*, 90 F.4th at 149. The caselaw that the district court applied to Runyon's motion, *see* JA386–387, all relies on *Gonzalez*, in some cases erroneously extending it beyond the Rule 60(b) context. It was error for the district court to adopt that reasoning here. In *Rivers v. Lumpkin*, 99 F.4th 216 (5th Cir. 2024), for example, the Fifth Circuit confronted a situation where a petitioner filed a new petition raising new claims in district court, three years after his original petition had been dismissed, and while the appeal of that dismissal was pending in the court of appeals. *Id.* at 218. The court of appeals subsequently entered judgment denying the appeal of the first-in-time petition. *Id.* at 219. The court construed *Gonzalez* as holding that "filings

introduced after a final judgment that raise habeas claims, no matter how titled, are deemed successive," and applied that rule to hold the new petition an unauthorized successor. *Id.* at 222.

*Gonzalez*, however, did not make such a broad holding—as the Supreme Court later made clear in *Banister.* This fatally undermines the reasoning of *Rivers*. *See also Santarelli*, 929 F.3d at 105 (distinguishing caselaw based on *Gonzalez* and finding it "generally consistent" with its precedent allowing amendment on remand "because we read [these] cases as solely concerning the inherent nature of Rule 60(b) motions").

But the *Rivers* court also was never confronted with the same circumstances as this case, where a petitioner *successfully* appealed and ended up back in the district court on remand. In *Rivers*, the new habeas petition was filed after the district court had lost jurisdiction (because the case was on appeal), and the district court never regained jurisdiction: the court of appeals affirmed the denial. 99 F.4th at 218–19. Accordingly, the district court could not consider an amendment to a petition it did not have jurisdiction over.

Many of the cases cited by the district court share this distinguishing feature. *See also, e.g.*, *Phillips v. United States*, 668 F.3d 433, 435 (7th Cir. 2012) (holding a Rule 60(b) filed in district court while appeal was pending in court of appeals was unauthorized successor); *Ochoa v. Sirmons*, 485 F.3d 538, 539–40, 541 (10th Cir.

2007) (similarly holding petitioner's attempt to add new claims to petition while petition was pending on appeal and appellate court had jurisdiction was subject to AEDPA gatekeeping); *United States v. Terrell*, 141 F. App'x 849, 852 (11th Cir. 2005) (similar).

In fact, some of these cases acknowledge the significance of this jurisdictional defect and suggest that in a case like Runyon's the outcome would be different. In *Terrell*, for example, the petitioner had filed a brand new substantive claim in district court while his initial petition was on appeal. *Id.* at 851. The Eleventh Circuit distinguished *Ching v. United States*, 298 F.3d 174 (2d Cir. 2002), on the basis that in that case, "the district court, after remand, had before it both the initial § 2255 motion and a subsequent motion." *Terrell*, 141 F. App'x at 851. The Eleventh Circuit went on to note the circumstances of the instant case were different because "there was no pending § 2255 motion in the district court . . . hence, there was nothing to amend." *Id.* at 852. And the denial of the petitioner's initial petition was ultimately affirmed, so "it would make no sense to remand and direct the district court to treat the motion to reopen and reduce sentence as a motion to amend an initial § 2255 motion that no longer exists." *Id.*; *see also Phillips*, 668 F.3d at 435 (a "motion to amend that is filed within the time to appeal might be treated as a continuation of the original application"). Unlike those petitioners, Runyon *did* have a pending § 2255 motion in the district court. There *was* something to amend.

*Beaty v. Schriro*, 554 F.3d 780 (9th Cir. 2009), the case the district court thought "most closely matches the procedural posture in this case," JA387, in fact looks nothing like Runyon's case. In *Beaty*, a habeas petitioner attempted to file entirely new claims after the district court dismissed his petition. 554 F.3d at 782. He then proceeded to file the new claims directly with the court of appeals. *Id.* The Ninth Circuit rejected both efforts, holding that "to allow the filing of new claims this late in the process would essentially nullify the rules about second and successive petitions[.]" *Id.* at 783. Here, Runyon neither attempted to file entirely new claims, nor did he do so after the dismissal of his petition. Accordingly, *Beaty* is irrelevant.[6]

The only other case cited by the district court was *Williams v. Norris*, 461

---

[6] *Balbuena v. Sullivan*, 980 F.3d 619 (9th Cir. 2020), also cited by the district court, JA388 n.10, is equally irrelevant. It not only involved a Rule 60(b) motion that sought to add a new claim (and therefore a straightforward application of *Gonzalez*), it also involved a *limited* remand based on Federal Rule of Appellate Procedure 12.1. Rule 12.1 allows the appellate court to remand for an indicative ruling by the district court on how it *would* rule on a Rule 60(b) *if* jurisdiction were restored. But a Rule 12.1 remand, critically, *does not give jurisdiction back to the district court*: "Here, we entered a limited remand under [Rule] 12.1(b) for the district court to consider Balbuena's Rule 60(b) motion, *but we retained jurisdiction over the denial of his habeas petition*." *Balbuena*, 980 F.3d at 638 (emphasis added). What such a remand doesn't do is to allow the district court to consider the merits or a motion under Rule 15. *Id.* ("[T]he district court could not apply Rule 15; instead, it could only consider Balbuena's new claim if it set aside its earlier judgment under Rule 60(b)."). All of these features distinguished *Balbuena* from the caselaw that Runyon relies on, and Runyon's case itself. *See id.* at 637 (finding *Ching*, *Whab*, and *Santarelli* "are distinguishable because they do not address Rule 60(b) motions or apply *Gonzalez*").

F.3d 999 (8th Cir. 2006). This case held that "the district court correctly dismissed [petitioner]'s Rule 59(e) and 60(b) motions as de facto successive habeas petitions." *Id.* at 1002. But that conclusion is directly at odds with the Supreme Court's later (and controlling) decision in *Banister*.

Not a single case the district court relied on looks anything like Runyon's. Rather, it is the cases cited earlier from the Second and Third Circuits—*Whab* and *Santarelli*—that actually address the question presented here, and this Court should follow their reasoning.

Since the district court properly had jurisdiction over Runyon's entire petition, it should have considered his motion to amend or supplement, or, in the alternative, for reconsideration on its own terms.

**III. Allowing Runyon to Amend Claim 9 of His Still-Pending Initial Habeas Petition Is Consistent with the Mandate Rule.**

Although its jurisdictional holding was sufficient to resolve Runyon's motion, the district court went further to hold that the motion was also outside the scope of this Court's mandate. JA391–392. This is wrong. A petitioner can reopen issues where there's been a major change in the law, which is exactly what happened here.

In general, a lower court "must carry out the mandate of the higher court, but may not reconsider issues the mandate laid to rest." *United States v. Cannady*, 63 F.4th 259, 266 (4th Cir. 2023) (the so-called "mandate rule"). The mandate rule "governs what issues the lower court is permitted to consider on remand." *United*

*States v. Susi*, 674 F.3d 278, 283 (4th Cir. 2012). It serves as a "specific application of the law of the case doctrine." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). It is this rule that prevents any "eviscerat[ion]" of an appellate court's "ability to limit the scope of remand for habeas petitions." *See* JA385.

But the mandate rule has exceptions, and as this Court has recognized, "the trial court may still possess some limited discretion to reopen [an] issue in very special situations." *Bell*, 5 F.3d at 67 (quoting *United States v. Bell,* 988 F.2d 247, 250 (1st Cir. 1993)). In particular, a habeas petitioner may "resurrect[] an issue on remand" where there is a showing either that "controlling legal authority has changed dramatically" or "that a blatant error in the prior decision will, if uncorrected, result in serious injustice." *Cannady*, 63 F.4th at 267. Both exceptions are present here.

Under the first exception, "when intervening legal authority undermines or rejects the principal legal reasoning behind the district court's prior decision," the mandate rule poses no obstacle. *Cannady*, 63 F.4th at 267; *see also United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) ("In light of the 'exceptional circumstance [ ]' of a change in controlling authority with respect to Rule 804(b)(6) after *Lentz I,* the mandate did not prevent the district court from reconsidering the admissibility of the statements."); *Reynolds v. Middleton*, 779 F.3d 222, 226 n. 1 (4th Cir. 2015) ("In the event the Supreme Court's decision in *Reed* undermines the district court's

analysis of the neutrality issue, the district court on remand will be free to reconsider the issue."). The intervening Supreme Court decision in *United States v. Taylor*, 596 U.S. 845 (2022), "marked a clear change in precedent and satisfied the first exception to the mandate rule," *see Cannady*, 63 F.4th at 268.

In Claim 9 of his § 2255 motion, Runyon argued that his conviction under § 924(c) was unconstitutional based on *Johnson v. United States*, 576 U.S. 591 (2015). JA179–189. Specifically, he argued that the residual clause of the statute was void for vagueness,[7] and that neither of his two predicates, carjacking and conspiracy to commit murder for hire resulting in death, were crimes of violence. JA179–189. After dismissal by the district court, *Runyon v. United States*, 228 F. Supp. 3d 569, 632 (E.D. Va. 2017), Runyon appealed.

The panel majority decision of this Court affirming Runyon's § 924(c) conviction relied on the so-called "realistic probability" test to hold that conspiracy to commit murder for hire was, in fact, a crime of violence. *United States v. Runyon*, 994 F.3d 192, 200 (4th Cir. 2021). The panel analyzed Runyon's claim in two steps. First, it applied the categorical approach and acknowledged the predicate crime of conspiracy to commit murder does not qualify as a crime of violence under § 924(c), because there was a "theoretical possibility" that the crime could be committed

---

[7] This was later confirmed by the Supreme Court's decision in *United States v. Davis*, 588 U.S. 445 (2019).

without the use of violent force. *Id.* at 203. This analysis was—and remains—correct. However, the panel majority then took a second step and held that, because there was no "realistic probability" the government would indict a conspirator absent the use of violent force, the crime could still be deemed a "crime of violence" and a valid predicate for a conviction under § 924(c). *Id.* at 203–04.

Just as in *Cannady*, the basis of this Court's decision in *Runyon* was completely undermined by the Supreme Court's subsequent decision in *Taylor*. In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A), because no element of the offense requires the government to prove that the defendant used, attempted to use, or threatened to use force. In reaching that conclusion, the Supreme Court expressly rejected the realistic probability test:

> To determine whether a federal felony qualifies as a crime of violence, §924(c)(3)(A) doesn't ask whether the crime is *sometimes* or even *usually* associated with communicated threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force.

*Taylor*, 596 U.S. at 857–58. The Court clearly instructed that, rather than apply the realistic probability test, a reviewing court must apply *only* the categorical approach to determine if a federal felony qualifies as a crime of violence under § 924(c). *Id.* at 860; *see United States v. Green*, 67 F.4th 657, 669 (4th Cir. 2023) (acknowledging that in "*Taylor*, the Supreme Court clarified that the realistic probability test is an

inappropriate way to determine whether a predicate offense satisfies § 924(c)'s elements clause.").

Without resort to the realistic probability test, this Court's analysis in *Runyon* could not be clearer—conspiracy to commit murder for hire resulting in death does not categorically count as a crime of violence. Therefore, it cannot support a § 924(c) charge.[8] *Taylor* "directly applied to and undermined the [] reason for" sustaining the conspiracy charge as a valid predicate. *Cannady*, 63 F.4th at 268. It therefore "marked a clear change in precedent and satisfied the first exception to the mandate rule." *Id.* at 268.

Because an exception to the mandate rule applies here, the district court should have considered Runyon's Claim 9 motion on its merits.[9]

## IV. Runyon's § 924(c) Conviction Is Invalid in Light of The Supreme Court's Decision in *Taylor*.

After *Taylor*, Runyon's conviction for conspiracy to commit murder for hire cannot serve as a predicate to his § 924(c) charge. Because there is more than a reasonable likelihood that the jury relied on the invalid conspiracy predicate to convict Runyon on the § 924(c) offense, that conviction is unconstitutional.

---

[8] Although the alternate predicate, carjacking, remains valid, there is strong evidence the jury relied on the invalid conspiracy predicate to convict Runyon under § 924(c), and thus there is "more than a reasonable possibility that the error was harmful." *United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022). *See infra* § IV.

Despite that the district court did not reach the merits of Runyon's Claim 9, it would be appropriate for this Court to decide the issue in the first instance: it raises a question of law that can be decided on the existing record, and, as the following analysis explains, "the outcome is readily apparent." *See United States v. Green*, 67 F.4th 657, 666 (4th Cir. 2023) (quoting *Bigelow v. Virginia,* 421 U.S. 809, 826–27 (1975)); *Perry v. Bartlett*, 231 F.3d 155, 160 (4th Cir. 2000) (holding district court's failure to reach a question erroneous, and deciding it in the first instance "because the question is a purely legal one"); *Freight Drivers & Helpers Loc. Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 218 (4th Cir. 2015) (similar) (collecting additional caselaw finding remand unnecessary where "arguments raise purely legal questions based on facts not in dispute").

**A. *Taylor* Closed The "Realistic Probability" Loophole That This Court Relied On To Affirm Runyon's § 924(c) Conviction in *Runyon.***

Runyon's § 924(c) conviction was predicated on an invalid § 1958(a) conspiracy violation, and therefore must be vacated.

Jurors convicted Runyon of conspiracy to commit murder for hire, 18 U.S.C. §1958; taking a motor vehicle resulting in death, 18 U.S.C. §§ 2119; and murder with a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1). The trial court instructed jurors that either the conspiracy or the carjacking offense could serve as a predicate for the § 924(c) conviction. *Runyon*, 994 F.3d at 201. The jury did not say which predicate it relied on to convict on the § 924(c) charge. *Id.*

36

The Supreme Court subsequently decided a string of cases finding the definition of "crime of violence" unconstitutionally vague. *See, e.g.*, *Johnson*, 576 U.S. at 596–97 (definition of "crime of violence" in residual clause of Armed Career Criminal Act unconstitutionally vague); *Sessions v. Dimaya*, 584 U.S. 148, 152 (2018) (extending *Johnson* to find definition of crime of violence in 18 U.S.C. § 16(b) unconstitutional). Most recently, the Supreme Court clarified in *Taylor* that because a § 1958 conspiracy can be completed without "the use, attempted use, or threatened use of force," it is not a crime of violence under § 924(c). *See* 596 U.S. at 860. In *Taylor*, the Court instructed that courts "must employ a categorical approach when interpreting the reach of § 924(c)(3)(A)" and may not stray into "empirical inquir[ies] into how crimes are usually committed." *Id*. The elements-based categorical approach under § 924(c) "begins and ends with the offense's elements." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019). If the relevant statute defines the offense "in a way that allows for both violent and nonviolent means of commission, that offense is not 'categorically' a crime of violence under the force clause." *Id*.

As this Court noted in *Runyon*, "conspiracy generally does not serve as a valid predicate under the force clause" of § 924(c), because conspiracy to commit murder-for-hire does not *require* the use of violent force and may be satisfied through nonviolent means. 994 F.3d at 199. That should have resulted in vacatur of Runyon's

37

§ 924(c) conviction. But the panel majority reasoned that because there is "no 'realistic probability' of the government prosecuting a defendant for entering into a conspiracy with the specific intent that a murder be committed for hire and for a death resulting from that conspiracy while that death was somehow only accidentally or negligently caused," *id.* at 203, the conspiracy charge was a valid predicate. It is this "realistic probability" loophole that *Taylor* has now closed.

This Court has recognized as much in several recent decisions.[10] For example, in *United States v. McDaniel*, the Court confirmed that a defendant need not show a "realistic probability" the government would prosecute an assault offense in a way that would render it not a crime of violence. 85 F.4th 176 (4th Cir. 2023). *See also id.* at 186 n.13 (realistic probability test does not apply when using categorical approach). Citing *Taylor*, the court clarified "that a defendant is not required to 'present evidence of how his [federal] crime of conviction is normally committed or usually prosecuted.'" *Id*. In another case, which was on review of a § 2255 motion,

---

[10] This Court's outlier decision in *United States v. Navarro-Cervellon*, No. 22-4696, 2024 WL 771699 (4th Cir. Feb. 26, 2024), does not change this analysis. In addition to being unpublished, the Court was clear that its discussion of *Taylor's* effect on *Runyon's* logic was dicta. *Id.* at *2 ("To be clear: We need not—and thus do not— decide whether *Runyon's* holding about Section 1958(a) remains correct or binding post-*Taylor*."). And the decision misreads *Runyon*, which relied on the reasonable probability test as the sole basis for determining that a § 1958(a) offense qualified as a crime of violence while expressly acknowledging that such offense would not qualify under the categorical approach.

this Court explained that *Taylor* "clarified that the realistic probability test is an inappropriate way to determine whether a predicate offense satisfies § 924(c)'s elements clause." *United States v. Green*, 67 F.4th 657, 669 (4th Cir. 2023). Together, these decisions leave no doubt that post-*Taylor*, the categorical approach is the sole test for determining whether conspiracy to commit murder-for-hire qualifies as a crime of violence.

**B. Runyon Was Prejudiced By The Inclusion Of The Invalid Predicate.**

The record shows that the jury relied on the invalid conspiracy predicate when it convicted and sentenced Runyon on the § 924 charge. That conviction and sentence therefore must be vacated. As noted above, the § 924(c) count had two possible predicates: (1) carjacking in violation of § 2119; and (2) the § 1958(a) conspiracy. *Runyon*, 994 F.3d at 201. "[T]he jury was not asked to indicate in its verdict form whether it was relying on conspiracy to commit murder for hire or carjacking in finding Runyon guilty under § 924(c)(1), (j)(1)." *Id*. Because § 1958 conspiracy is no longer a crime of violence after *Taylor*, the verdict form was erroneous.

To show prejudice, Runyon must demonstrate "'more than a reasonable possibility that the error was harmful.'" *United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 268 (2015)). This Court has explained that where, as here, there are two predicate offenses, and one is later

invalidated, there must be some evidence that jurors relied on the invalid predicate; ambiguity alone is insufficient. *Said*, 26 F.4th at 659; *United States v. Ali*, 991 F.3d 561, 575 (4th Cir. 2021).

Here, there is strong evidence that the jury relied on the invalid § 1958 conspiracy predicate to sustain the § 924(c) conviction. Although jurors recommended death for the § 924(c) violation without specifying the applicable predicate crime of violence, the jury imposed a life sentence for the carjacking. *Runyon*, 994 F.3d at 199. It follows that jurors imposed the § 924(c) death sentence based on the conspiracy charge—not the carjacking charge—as the predicate. It would be a "commonsense-defying conclusion," *Said*, 26 F.4th at 662, that jurors would return a death sentence for conduct (carjacking) they had *already* deemed less serious.

In addition, the record shows that the government spent most of its energy at trial on proving the conspiracy among Runyon and his co-defendants—of which the carjacking was only a small constituent part. For instance, the government emphasized during guilt-phase closing arguments that the carjacking was simply an attempt to obfuscate the conspiracy at the heart of the case. JA133–134. And the government made little effort to connect the gun to the carjacking. The government

did not even mention use of a gun (a prerequisite for a § 924(c) charge) in connection with the carjacking until its closing argument rebuttal. JA133.[11]

This is not a case where it is easy to imagine jurors relying interchangeably on either predicate to support the § 924(c) conviction; the evidence weighs in only one direction. That is more than enough to demonstrate "a reasonable possibility" that jurors relied solely on the conspiracy to commit murder predicate to find Runyon guilty of the § 924(c) charge. *See Said*, 26 F.4th at 660.

**CONCLUSION**

For the reasons set forth herein, this Court should grant a Certificate of Appealability and issue a final briefing order. Upon full review, this Court should vacate Runyon's § 924(c) conviction and sentence under *Johnson* and remand for a new sentencing hearing on remaining counts.

---

[11] And it would have been hard pressed to do more, as the evidence at trial linking a gun to the carjacking was minimal: the pictures from the ATM that constitute the bulk of the evidence of the carjacking are very dark, and only a shadowy shape and reflective light can be seen and possibly considered to be a gun. JA93–126. The bank security officer who reviewed these photographs did not testify about anything resembling a gun. Similarly, as defense counsel emphasized in closing, the ATM pictures show Cory Voss looking towards the passenger door; he then leaves the ATM, only to return a few minutes later, but this time without the same shadowy figure in the passenger seat, leaving doubt as to the extent of the so-called carjacking. JA93–126, JA129–132.

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant respectfully submits that, given the complexity and novelty of the issues presented, oral argument would be helpful to the disposition of this appeal. *See* 4th Cir. Local Rule 34(a).

Dated: March 24, 2025

/s/ *Kathryn M. Ali*
Kathryn M. Ali
Meghan C. Palmer
ALI & LOCKWOOD LLP
501 H Street N.E., Suite 200
Washington, D.C. 20002
Telephone: 202-651-2475
katie.ali@alilockwood.com

Robert Lee
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone: 434-817-2970
roblee@vcrrc.org

*Counsel for Defendant-Appellant David Runyon*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,440 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point size Times New Roman font.

/s/ *Kathryn M. Ali*
Kathryn M. Ali

*Counsel for Defendant-Appellant*
*David Runyon*

# CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, the foregoing document was served

on all parties or their counsel of record through the CM/ECF system.

/s/ *Kathryn M. Ali*
Kathryn M. Ali

*Counsel for Defendant-Appellant*
*David Runyon*